UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CODY A. BERTRES, | : | CIVIL NO. **1:06-CV-1623** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| DOUG BYERS | : | |
| and TIM CLEVENGER, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I.  Procedural and Factual Background**

The plaintiff, a prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint on August 18, 2006.  (Doc. 1.)

The complaint names as defendants: Doug Byers, a Correctional Officer at the Huntingdon County Prison; and Tim Clevenger, also a Correctional Officer at the Huntingdon County Prison.  The plaintiff alleges that the defendants used excessive force and denied medical treatment to him while he was confined in the Huntingdon County Prison.

The plaintiff is seeking compensatory damages based on the alleged violations of his constitutional rights.

The defendants filed an answer to the complaint on
November 6, 2006.  (Doc. 13.)

On March 16, 2007, the defendants filed a motion for
summary judgment, a Local Rule 56.1 statement of material
facts, a brief and documents in support of their motion for
summary judgment.  The plaintiff did not file a brief in
opposition to the motion for summary judgment as required by
Local Rule 7.6, Rules of Court, M.D. Pa.  Therefore, on April
16, 2007, the court ordered the plaintiff to file a brief in
opposition to the defendants' motion for summary judgment, a
response to the defendants' statement of material facts and
any summary judgment evidence in opposition to the motion on
or before May 1, 2007.  The plaintiff failed to comply.  A
Report and Recommendation was filed on May 23, 2007,
recommending that the plaintiff's complaint be dismissed
pursuant to Federal Rule of Civil Procedure 41(b) for failure
to comply with Local Rule 7.6 and the court's order dated
April 16, 2007.

On June 14, 2007, the plaintiff filed a document entitled
"Petition for Extraordinary Relief," construed by the court as
an objection to the Report and Recommendation.  The plaintiff
had changed his address and had not received the April 16,
2007 Order until the second week of May, and had not received
the defendants' motion for summary judgment and accompanying
documents.  By Order of June 15, 2007 the plaintiff was

directed to comply with the April 16, 2007 Order within twenty days.

On August 14, 2007, the plaintiff filed a brief and related documents in opposition to the defendants' motion for summary judgment.  The defendants filed a reply brief on August 21, 2007.  The defendants' motion for summary judgment will be addressed in this Report and Recommendation.

## II.  Discussion

### A.  *Summary Judgment Standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set

forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson*, *supra*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex, supra*, 477 U.S. at 323).

4

If allegations in a verified complaint are specific and based on personal knowledge, the complaint should be treated as an affidavit in support of or in opposition to a motion for summary judgment. *Wilson v. Maben*, 676 F. Supp. 581, 583 (M.D. Pa. 1987). *See also Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit in opposition to motion for summary judgment); *Colon v. Couglin,* 58 F.3d 865, 872 (2nd Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."). The plaintiff's complaint is verified. (Doc. 1 at 14.)

The defendants argue that they are entitled to summary judgment because the plaintiff failed to exhaust Huntington County Prison's grievance procedure. They also argue that the undisputed facts establish that defendant Clevenger did not act with deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment and that defendant Byers did not maliciously or sadistically use excessive force on the plaintiff. They also argue that any claims against individual officials in their official capacities should be dismissed.

The following facts are not in dispute, pursuant to Rule 56 of the Federal Rules of Civil Procedure, LR 56.1, the

verified complaint and the summary judgment affidavits and documentation:

At approximately 1:00 p.m. on August 5, 2005, the plaintiff injured his hand and thumb while playing basketball in the recreation yard with other inmates.  (Doc. 1, Statement of Facts ¶ 1; Doc. 13, Answer to Statement of Facts ¶ 1; Doc. 18 ¶¶ 1, 2; Doc. 37 ¶¶ 1, 2.)  The plaintiff informed defendant Clevenger, the on-duty shift officer, that he had suffered an injury.  (Doc. 1, Statement of Facts ¶ 1; Doc. 18 ¶ 2; Doc. 37 ¶ 2.)  The parties dispute whether defendant Clevenger denied the plaintiff's request to go inside for treatment. (Doc. 1, Statement of Facts ¶ 1; Doc. 13, Answer to Statement of Facts ¶ 1; Doc. 18 ¶ 3; Doc. 37 ¶ 3.)

Once back inside his cell, the plaintiff asked defendant Clevenger for ice and requested that the nurse examine his hand.  (Doc. 1, Statement of Facts ¶ 3.)  Defendant Clevenger indicated that he would inform someone of his injury and that he would get ice for the plaintiff.  *Id.*; (Doc. 18 ¶ 5; Doc. 37 ¶ 5.)  The plaintiff states that defendant Clevenger failed to follow through.  (Doc. 1, Statement of Facts ¶ 3.)  The defendants state that the nurse was contacted and the plaintiff was provided ice and Tylenol.  (Doc. 13, Answer to Statement of Facts ¶ 3; Doc. 18 ¶ 6; Doc. 37 ¶ 6.)

At about 5:00 p.m., during mealtime, defendant Byers noticed no injury to the plaintiff's hand.  (Doc. 18 ¶ 8; Doc.

6

37 ¶ 8.)   After mealtime, the plaintiff was to be transported
to a holding cell.  (Doc. 18 ¶ 13; Doc. 37 ¶ 13.)   The
plaintiff complied with defendant Byers' request to place his
hands through the "pie-hole" and "cuff-up."  (Doc. 18 ¶¶ 14,
15; Doc. 37 ¶¶ 14, 15.)   Defendant Byers held the handcuff
chains to maintain control over the plaintiff because he was
disruptive and was yelling.  (Doc. 18 ¶¶ 16, 18.)   The
plaintiff resisted defendant Byers' attempt to control him,
pulled back and spit in defendant Byers' face.  (Doc. 18 ¶¶
19, 20.)   The plaintiff denies that he spit on defendant
Byers.  (Doc. 37 ¶ 20.)   The plaintiff described the incident
with defendant Byers, stating, "we both had a misunderstanding
and things got out of control.  I didn't spit on him on
purpose it was from me yelling the spit was flying out when I
was yelling."  (Doc. 16, Ex. G.)

      Defendant Byers pulled the plaintiff towards the cell
gate to regain control over him.  (Doc. 18 ¶¶ 21, 22; (Doc. 37
¶¶ 21, 22.)   The plaintiff states that he pulled back due to
pain, and defendant Byers continued to pull the plaintiff
forward towards the cell gate.  (Doc. 1, Statement of Facts ¶
16; Doc. 37 ¶ 18.)   C.O. Stewart witnessed the incident and
stated that defendant Byers "did not repeatedly pull on
Plaintiff's arms, hands, or handcuffs such that Plaintiff was
repeatedly pulled against the cell bars."  (Doc. 18 ¶ 24.)

      C.O. Stewart helped defendant Byers remove the plaintiff
from his cell.  (Doc. 18 ¶ 25.)   The parties dispute whether

the plaintiff's arms were pinned between the cell gate and the
cell door.  (Doc. 1, Statement of Facts ¶ 19.)  C.O. Stewart
stated that the "cell gate/door was never opened in a manner
that trapped, pinched, or pinned Plaintiffs' arms or hands."
(Doc. 18 ¶ 27.)  Once the cell door opened, the plaintiff
pulled away and raised his hands.  (Doc. 18 ¶ 28.)  The
correctional officers believed the plaintiff was a threat.
(Doc. 18 ¶ 28.)  The plaintiff disputes that he posed a threat
to the officers.  (Doc. 37 ¶ 28.)

    Defendant Byers attempted to regain control over the
plaintiff by pushing him to the back of the cell, causing his
buttocks and back/shoulder area to hit the wall.  (Doc. 18 ¶
30.)  The plaintiff states that defendant Byers entered the
cell and slammed the plaintiff's face and body into the wall
four to five times, causing great pain.  (Doc. 1, Statement of
Facts ¶ 23.)  C.O. Stewart stated that defendant Byers did not
repeatedly push the plaintiff against the cell wall.  (Doc. 18
¶ 31; Doc. 37 ¶ 31.)

    The correctional officers then transported the plaintiff
to the holding cell.  (Doc. 18 ¶ 32; Doc. 37 ¶ 32.)  The
plaintiff resisted the transportation by placing his feet in
front of his body.  (Doc. 18 ¶ 33; Doc. 37 ¶ 33.)

    Both defendant Byers and C.O. Stewart stated that they
asked the plaintiff, according to standard operating
procedure, if he wanted medical attention when placed in the

holding cell and he responded, "no."  (Doc. 18 ¶¶ 34, 35; Doc. 16, Ex. H ¶ 23; Doc. 16, Ex. I ¶ 21; Doc. 37 ¶¶ 34, 35.)  The plaintiff acknowledges that the officers asked if he wanted medical attention, however he believed they were being sarcastic.  (Doc. 37 ¶¶ 34, 35, 37.)  The plaintiff noticed bruises on his body and face and a lump on his head.  (Doc. 1, Statement of Facts ¶ 25.)  He experienced dizziness, headaches and pain and remained in the holding cell throughout the night with no medical treatment.  (Doc. 1, Statement of Facts ¶¶ 26, 27.)  C.O. Stewart performed a strip search of the plaintiff in the holding cell and found no injury to the plaintiff's hand or thumb.  (Doc. 18 ¶ 7; Doc. 37 ¶ 7.)

The plaintiff remained isolated in the holding cell for fifteen days.  (Doc. 1, Statement of Facts ¶ 28.)  He was then placed back on the main cell block in disciplinary lockup for an additional fifteen days.  (Doc. 1, Statement of Facts ¶ 28.)  The defendants acknowledge that the plaintiff was given thirty days of lockup due to his misconduct.  (Doc. 13 ¶ 28.)

Defendant Byers and C.O. Stewart were never aware of any injuries the plaintiff suffered as a result of the transportation.  (Doc. 18 ¶ 36.)  Defendant Byers stated that he used what he believed was the appropriate force to move the plaintiff to the holding cell.  (Doc. 18 ¶ 38.)

The plaintiff's hand was examined the next day, August 6, 2005.  (Doc. 18 ¶ 9; Doc. 37 ¶ 9.)  The medical note states

9

that the plaintiff's hand was swollen, and his left thumb was
tender and painful with movement.  (Doc. 18 ¶ 9; Doc. 18 ¶ 9.)
The plaintiff underwent an x-ray of the left hand and thumb on
August 6, 2005.  (Doc. 18 ¶¶ 10, 11; Doc. 16, Ex. C; Doc. 37
¶¶ 10, 11.)  The x-ray revealed no injury to the plaintiff's
left hand or thumb, normal bone structure, no fractures, the
joint spaces were well maintained and the overlying soft
tissues were unremarkable.  (Doc. 18 ¶ 12; Doc. 16, Ex. C;
Doc. 37 ¶ 12.)

    The plaintiff never filed a grievance pertaining to his
denial of medical care claim and excessive use of force claim,
despite the prison's requirement that all grievances be filed
within five days of the grievable event.  (Doc. 18 ¶¶ 39, 45.)
The defendants state that each inmate is provided with an Inmate
Handbook, the Inmate Grievance Procedure is posted on the
bulletin board in the prison, any correctional officer may
provide the inmate with a grievance form and a grievance may be
filed via request forms.  (Doc. 18 ¶¶ 40-43.)  The plaintiff
states in his verified complaint that he requested a grievance
form but was never provided a form.  (Doc. 1, Previous Lawsuits
by Plaintiff ¶ 8.)  The plaintiff disputes the existence of the
Huntington County Prison's grievance procedure in 2005 and
disputes that he received the Inmate Handbook. He also disputes
the applicability of the grievance procedure to him.

### B. *Failure to Exhaust*

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The defendants properly raised the plaintiff's failure to exhaust in the instant motion for summary judgment. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) (holding that defendants must plead and prove the exhaustion issue as an affirmative defense).

The Third Circuit in *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004), stated that the court is to consider the merits of a claim of a prisoner who has failed to exhaust a grievance procedure when there is cause for a failure to exhaust, and that a prison's grievance system's procedural requirement may not be imposed in a way that offends the Constitution or federal policy as contained in § 1997e(a).

The first inquiry is whether the plaintiff did exhaust his administrative remedies; that is, whether there are "further avenues of relief available to him within the prison's inmate grievance process." The Huntington County Prison's grievance procedure is outlined in the Prison's Grievance Procedure pamphlet, which provides in pertinent part:

> At any time within five days after a potentially grievable event has occurred, an inmate may file a

formal, written grievance.  An Officer will provide
the inmate with a grievance form.  The Officer will
instruct the inmate in the basic requirements for
filling out the form if the inmate so <u>requests.</u>

Once the inmate has completed the grievance form, the
Officer will accept it from the inmate and forward it
to the Sergeant, who will attempt an informal
resolution.  If not resolved informally within twenty-
four hours, the Sergeant will refer the issue to the
Deputy Warden.  The Deputy Warden will log it in and
assign it to a Sergeant.  The Sergeant will conduct a
review of prison policies and procedures to determine
if any have been violated.

The Sergeant will seek to remedy the grievance within
five days.  This will be done through an informal
resolution in which both parties agree verbally to a
remedy or through a formal resolution in which all
remedies and dispositions are proposed in written form
under the supervision of the Deputy Warden, with
copies to the inmate, the central file, and the
Warden.  The record of the final written formal
resolution will be returned to the inmate within
fifteen days.

(Doc. 16, Ex. F) (emphasis in original).  The Huntington County

Prison's grievance appeal process provides:

Inmates who are dissatisfied with the resolution of a
grievance by the Grievance Committee will have three
working days after the receipt of the notice of
decision to appeal to the Warden.

The Warden will have ten working days to make a
determination on the appeal and to reply to the
inmate.  The reply will be in writing and the inmate
will sign to indicate he/she has received notification
of the appeal decision.  The Warden['] s decision as to
inmate grievances will be final.

(Doc. 16, Ex. F.)


To have exhausted the Huntington County Prison's

grievance process, the prisoner must have filed a grievance

within five days of the incident.  If the grievance is denied,

the prisoner must have filed an appeal.  The plaintiff did not

12

file a grievance regarding the present claim.  The plaintiff
concedes that he did not exhaust his administrative remedies.
(Doc. 1.)  In his complaint, the plaintiff states, "I did not
use the prison grievance procedure."  (Doc. 1, Previous
Lawsuits by Plaintiff ¶ 8.)  However, he states that he asked
for a grievance form but the prison officials stated there was
no such form.  The plaintiff also states that he complained to
a higher official and was informed that the matter would be
addressed with the C.O. responsible for the incident.  *Id.*  In
his brief in opposition (Doc. 38) to the defendants' motion
for summary judgment, the plaintiff again asserts that he did
not file a grievance because he was denied a grievance form.
The plaintiff states that he requested a grievance form and
one prison staff member told him there was no such form, while
another staff member told him "he would handle it."  (Doc. 36
¶ 7.)

     The plaintiff acknowledges that he has not timely filed
an administrative remedy request pertaining to any of his
claims in this case.  The defendants filed an affidavit
indicating that they received no complaints or grievances
regarding this claim.  (Docs. 16, Ex. D.)  Warden Duane Black
is the final step in the inmate grievance procedure.  His
affidavit  states that "[e]ach inmate is made aware that a
grievance can be filed while incarcerated via the instructions
in the Inmate Handbook and the grievance notice is posted on
the inmate bulletin board."  (Doc. 16, Ex. D ¶ 10.)  Warden
Black's affidavit also indicates that he has access to all

prisoner grievance filings, and after a diligent search, he found no grievance filed by the plaintiff regarding the August 5, 2005 incident.  (Doc. 16, Ex. D ¶ 12.)

As stated above, a failure to exhaust may be excused if there is cause.  In *Hill v. Smith*, 186 Fed. App'x 271, 2006 WL 1674153 (3d Cir. June 19, 2006), the inmate argued that administrative remedies were not available to him because the appellees failed to provide him with grievance forms.  The district court resolved the exhaustion issue based on evidence presented before and during a preliminary injunction hearing.  The district court credited the appellees' testimony over the inmate's testimony, ultimately concluding that administrative remedies were available to the inmate.  The Third Circuit affirmed the district court's credibility determinations, but noted that if the case had been decided at the complaint stage the inmate's allegation that he was not provided with grievance forms "would be entitled to a presumption of truthfulness and would have stated a viable defense for failure to exhaust."  *Hill*, 186 Fed. App'x at 273, 2006 WL 1674153 at *1 (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (prison officials' actions preventing the inmate from using the grievance system rendered administrative remedies "unavailable")).  *See also Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (an administrative remedy may be unavailable where a prisoner is prevented by prison officials from pursuing the prison grievance process).

14

In the instant matter, the plaintiff's statements under penalty of perjury in his complaint that he was not provided a grievance form are adequate to establish that it is in dispute whether he was reasonably able to exhaust.  (Doc. 1, Previous Lawsuits by Plaintiff ¶ 8.)

The plaintiff's alleged lack of access to a grievance form, which is not free from dispute for summary judgment purposes, precludes a finding at this stage of a failure to exhaust.  Summary judgment should not be granted on the basis of a failure to exhaust.

### C.  *Eighth Amendment Excessive Force Claim*

The Eighth Amendment prohibits cruel and unusual punishment.  Whenever prison officials are accused of using excessive force in violation of the Eighth Amendment the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The following factors are relevant in determining if the force was applied in a good faith effort to restore discipline or maliciously and sadistically to cause harm: the extent of the injury suffered; the need for the application of the force; the relationship between that need and the amount of force used; the threat reasonably perceived by the official; and any efforts made to temper the severity of a forceful response.  *Id*.  Although the extent of injury suffered is a consideration that may be relevant to

15

determining if the force could have plausibly been thought necessary, to prove an Eighth Amendment excessive use of force claim an inmate does not need to show that he suffered a serious injury. *Id.*

In *Hudson*, *supra*, the Supreme Court noted that not every malevolent touch by a prison guard gives rise to an Eighth Amendment cause of action.  503 U.S. at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10.  Hudson testified that he was punched in the mouth, eyes, chest and stomach and that he was kicked and punched from behind. *Id.* at 4.  The Court stated that the blows directed at Hudson were not *de minimis* for Eighth Amendment purposes. *Id.* at 10.

The use of force stated by the plaintiff in this case, which is similar to the use of force at issue in *Hudson*, was not *de minimis* for Eighth Amendment purposes.

Defendant Byers argues that he did not use excessive force on the plaintiff. (Doc. 17 at 25-27; Doc. 18 ¶ 38.) Defendant Byers stated that the plaintiff resisted the officers' attempt to move the plaintiff to the holding cell. (Doc. 18 ¶ 33.)  They therefore used what they "perceived was necessary and reasonable force" to regain control over the

16

plaintiff.  (Doc. 16, Ex. H ¶ 22; Doc. 16, Ex. I ¶ 20.)

The plaintiff states that defendant Byers savagely attacked and assaulted him causing bodily harm and injury. (Doc. 1 ¶ 1.)  He states that when his hands were in the "pie-hole" defendant Byers continuously pulled on his hands, causing his face and body to slam against the inside of the cell gate.  (Doc. 1, Statement of Facts ¶¶ 15, 16.)  The plaintiff stated that his cell gate opened, pinning his arms between the gate and the cell door, causing more pain.  *Id*. at ¶ 19.  After the cell gate closed, defendant Byers released the plaintiff's hands and the plaintiff pulled his arms inside the cell.  *Id*. at ¶ 21.  The cell door then opened and defendant Byers entered the cell and slammed the plaintiff's face and body into the wall four to five times, causing great pain.  *Id*. at ¶ 23.  With the help of C.O. Stewart, defendant Byers forcefully took the plaintiff out of his cell and put him in the holding cell.  *Id*. at ¶ 24.  During the incident, the plaintiff states that defendant Byers "wantonly and maliciously" pulled on the plaintiff's injured thumb, intentionally causing pain.  (Doc. 36 at 7-a.)  The plaintiff submitted affidavits from inmates that witnessed the August 5, 2005 incident.  (*See* Doc. 36.)  These affidavits essentially corroborate the plaintiff's explanation of the August 5, 2005 incident.  (*See* Doc. 36.)

The plaintiff states in his sworn complaint that he had bruises on his body and face, a lump on his head, dizziness,

17

headaches and aches and pains.  (Doc. 1, Statement of Facts ¶¶
25, 26.)  He also states that the radiological reports and
physician's notes support his injuries.  (Doc. 36 at 8.)  The
affidavits of defendant Byers and C.O. Stewart state that, to
their knowledge, the plaintiff suffered no injury during the
transportation to the holding cell.  (Doc. 16, Ex. H ¶ 24;
Doc. 16, Ex. I ¶ 22.)  C.O. Stewart's affidavit also states
that he conducted a strip search of the plaintiff after he was
placed in the holding cell and noticed no abnormalities of his
hands.  (Doc. 16, Ex. I ¶¶ 23-25.)  Both defendant Byers and
C.O. Stewart state that they asked the plaintiff, according to
standard operating procedure, if he wanted medical attention
when placed in the holding cell and he responded, "no."  (Doc.
16, Ex. H ¶ 23; Doc. 16, Ex. I ¶ 21.)  However, as stated
above, the plaintiff believed they were being sarcastic.
(Doc. 37 ¶¶ 34, 35.)

     Defendant Byers admits that he pushed the plaintiff to
the back of his cell against the wall to regain control over
him.  (Doc. 16, Ex. H ¶ 18.)  Defendant Byers stated that the
plaintiff's "buttocks struck the wall as did his back and
shoulder area."  (Doc. 16, Ex. H ¶ 19.)  Defendant Byers
stated that he pushed the plaintiff to the wall only once, not
four to five times as the plaintiff states.  (Doc. 16, Ex. H ¶
19.)

     C.O. Stewart stated that defendant Byers did not
repeatedly pull on the plaintiff's hands, arms or handcuffs.

18

(Doc. 16, Ex. I ¶ 12.)   Rather, the plaintiff resisted
defendant Byers' attempts to transport him out of the cell.
*Id.* at ¶ 11.   C.O. Stewart told defendant Byers to release the
plaintiff so the cell gate could be opened.   C.O. Stewart
stated that at no time did the cell gate pin the plaintiff's
arms.   *Id.* at ¶ 14.   C.O. Stewart believed that the plaintiff
was a threat and might attempt to strike the correctional
officers; therefore, they used what they believed to be
appropriate force to regain control over him.   *Id.* at ¶ 15.
C.O. Stewart acknowledges that defendant Byers pushed the
plaintiff to the back cell wall.   *Id.* at ¶ 16.   He states that
"[a]t no time did Officer Byers repeatedly push inmate Cody
Bertres against the wall of the cell."   *Id.* at ¶ 17.   The
correctional officers stated that the plaintiff continued to
resist them and they used what they believed was the
appropriate force to move him to the holding cell.   *Id.* at ¶
20.

Accepting for summary judgment purposes the plaintiff's
description of the events, a fact finder could reasonably
infer that defendant Byers used an excessive amount of force
against the plaintiff.   Thus, the motion of defendant Byers
for summary judgment should be denied.

### D. *Eighth Amendment Failure to Provide Adequate Medical Care Claim*

In order for the plaintiff to establish a viable Eighth
Amendment medical care claim, he must demonstrate that the

defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Defendant Clevenger contends that the summary judgment evidence demonstrates that it is not in genuine dispute that he did not act with deliberate indifference, that the plaintiff has not suffered from a serious medical need and that the plaintiff received adequate medical care.  (Doc. 16 ¶ 4; Doc. 17 at 21.)

A serious medical need is a condition requiring treatment as diagnosed by a doctor or a condition "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).  The condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. *See Colburn*, *supra*, 946 F.2d at 1023.  Defendant Clevenger argues that the plaintiff's hand injury did not require urgent care and was not such an injury that may lead to death, degeneration or extreme pain.  (Doc. 17 at 21; Doc. 39 at 6.)

The plaintiff does not state that he suffered from any specifically named disease or injury.  Nor does the summary judgment evidence demonstrate a particular medical course or procedure that was evidently called for and not provided.

20

However, the plaintiff does state that he suffered a hand and
thumb injury, that he had bruises on his body and face, that
he had a lump on his head and that he experienced dizziness,
headaches and pain.  At this point, we cannot conclude as a
matter of law that the plaintiff did not suffer from a serious
medical need.

Mere medical malpractice does not give rise to a
violation of the Eighth Amendment.  *White v. Napoleon*, 897
F.2d 103, 108 (3d Cir. 1990).  "While the distinction between
deliberate indifference and malpractice can be subtle, it is
well established that as long as a physician exercises
professional judgment his behavior will not violate a
prisoner's constitutional rights."  *Brown v. Borough of
Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).  The Third
Circuit has "found 'deliberate indifference' in a variety of
circumstances, including where the prison official (1) knows
of a prisoner's need for medical treatment but intentionally
refuses to provide it; (2) delays necessary medical treatment
based on a non-medical reason; or (3) prevents a prisoner from
receiving needed or recommended medical treatment."  *Rouse v.
Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  The Third Circuit
has also "found 'deliberate indifference' to exist when the
prison official persists in a particular course of treatment
'in the face of resultant pain and risk of permanent injury.'"
*Id.* (quoting *White*, *supra*, 897 F.2d at 109).  Prison medical
authorities are given considerable latitude in the diagnosis

21

and treatment of medical problems of inmates and courts will
"disavow any attempt to second guess the propriety or adequacy
of a particular course of treatment . . . which remains a
question of sound professional judgment." *Little v. Lycoming
County*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (quoting *Inmates
of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.
1979)).

Allegations of "inadvertent failure to provide adequate
medical care fail to establish a violation of the Eighth
Amendment." *See Estelle*, 429 U.S. at 105; *see also Wilson v.
Seiter*, 501 U.S. 294, 297 (1991). Here, the plaintiff is not
stating that the medical staff inadvertently failed to provide
medical care. Rather, the plaintiff states that the prison
denied him medical treatment after repeated requests for
treatment. (Doc. 1.) He states that this denial resulted in
unnecessary and prolonged pain for him. When the plaintiff
was outside playing basketball he injured his hand and asked
defendant Clevenger if he could go inside for treatment.
Defendant Clevenger denied his request. When the plaintiff
returned to his cell he asked for ice and to be examined by
the nurse. Defendant Clevenger indicated that he would inform
the proper personnel of his injury and bring him ice.
Defendant Clevenger failed to do so. The plaintiff later
showed his hand to C.O. Stewart, who brought the plaintiff ice
and Tylenol. Later that evening, the plaintiff asked
defendant Byers if someone could examine his hand. Defendant

Byers told the plaintiff he was not going to the hospital.
The plaintiff again asked defendant Byers if his hand was
going to be treated.  The confrontation between defendant
Byers and the plaintiff then ensued and the plaintiff was
placed in the holding cell.  The plaintiff remained in the
holding cell overnight with no treatment for his injuries.

Susan Watkins, Licensed Practical Nurse at the Huntington
County Prison, examined the plaintiff on August 6, 2005, one
day after the alleged incident with defendant Byers.  (Doc.
16, Ex. A ¶ 9; Doc. 16, Ex. B.)  The only injury the plaintiff
reported to Nurse Watkins was a thumb and hand injury.  (Doc.
16, Ex. B.)

On August 6, 2005, the plaintiff was examined by Mark
Minor, M.D.  The plaintiff complained of left thumb pain with
swelling due to falling on his left hand while playing
basketball.  Dr. Minor noted swelling of the left hand at the
base of the thumb with large ecchymotic area, tenderness to
palpation and pain.  (Doc. 16, Ex. B.)  The plaintiff reported
no injuries with respect to the incident with defendant Byers.
Dr. Minor prescribed Tylenol and ordered an x-ray.  The
plaintiff underwent an x-ray of the left hand and thumb on
August 6, 2005.  (Doc. 16, Ex. C.)  The x-ray revealed no
injury to the plaintiff's left hand or thumb, normal bone
structure, no fractures, the joint spaces were well maintained
and the overlying soft tissues were unremarkable.  (Doc. 16,

23

Ex. C.)  However, the plaintiff states that the substandard
treatment of his hand injury resulted in substantial and
unnecessary pain.


   The plaintiff was provided with ice and Tylenol on the
day of his hand injury.  The next day the plaintiff was
treated by Nurse Watkins and Dr. Minor.  The x-ray of the
plaintiff's hand was essentially normal and he required no
further treatment.


   Viewing the summary judgment evidence in the light most
favorable to the plaintiff, a reasonable trier of fact could
not conclude that defendant Clevenger acted with deliberate
indifference to the plaintiff's health or safety.  Thus, the
motion of defendant Clevenger for summary judgment should be
granted.


   **E.   *Official Capacities Claim***

   The plaintiff requests that the defendants be held liable
for their actions in their professional, official and/or
individual capacities.  (Doc. 1, Prayer for Relief ¶ 30.)


   "Official-capacity suits . . . 'generally represent only
another way of pleading an action against an entity of which
an officer is an agent.'"  *Kentucky v. Graham,* 473 U.S. 159,
165-66 (1985) (quoting *Monell v. New York City Dept. of Social*

24

*Services,* 436 U.S. 658, 690 n.55 (1978)).  Given that the
defendants are correctional officers, the plaintiff's official
capacity claims against defendants Byers and Clevenger are
claims that would correctly be stated against Huntington
County, if at all.  The claims against the defendants in their
official capacities should be dismissed.


**III.   Conclusion**

Based on the foregoing, it is recommended that
defendants' motion (Doc. 16) for summary judgment be granted
in part and denied in part.  It is recommended that the
defendants' motion be granted and that the complaint be
dismissed as to the plaintiff's claims against defendants
Byers and Clevenger in their official capacities.  It is
recommended that the defendants' motion be denied with respect
to the plaintiff's Eighth Amendment excessive force claim
against defendant Byers.  It is recommended that the
defendants' motion be granted with respect to the Eighth
Amendment failure to provide adequate medical care claim
against defendant Clevenger.  It is further recommended that
the case be remanded to the undersigned for further
proceedings.


                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge
Dated:  October 18, 2007.